## Taylor, et al. v. Betts, et al.

(Decided December 8, 1910.)

### Appeal from Jessamine Circuit Court.

1. Elections—Special Elections—Question Submitted—Sale of Whiskey in Local Option City—Contest.—The following question was submitted to the voters of the city of Nicholasville, a city of

the fourth class, on February 15, 1910: "Do you wish the pro-hibition law now in force in the city of Nicholasville by virtue of an election held Sept. 20, 1906, to become inoperative and the sale, barter or loan of spirituous, vinous or malt liquors in said city be permitted?" There was a majority of thirty-five votes in favor of the sale of such liquors. On a contest of the election, Held, that while the proposition submitted is longer than it should have been, and is not as clearly stated as it might have been, we cannot say that it was calculated to and did affect the result of the election.

2. Registration of Voters—Time Fixed.—The failure of the county judge to fix the time for a special registration for said election on a day not less than five days prior to the election, rendered the election void under Ky. Statutes, section 1495, providing that: "Registrations prior to special elections shall be held not less than five days prior to the election."

3. Failure to Present Certificate at Poll—Effect.—If a voter votes at such an election without presenting or offering to present his certificate of registration, it follows, under the language of the statute, that his vote cannot be counted, and where it appears that about two-thirds of the voters voting at the election, had no right to vote under the statute, the election under such cir-cumstances cannot be upheld.

EMMETT PURYEAR and E. B. HOOVER for appellants.

N. L. BRONAUGH and JOHN H. WELCH for appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-MISSIONER—Reversing.

This appeal involves the validity of a local option election in Nicholasville, Kentucky, a city of the fourth class, on February 15th, 1910. The contest board and the circuit court held the election valid, and the contest-ants appeal.

There was a majority of thirty-five votes in favor of the sale of spirituous, vinous and malt liquors. Nich-olasville has three voting precincts, and this majority was obtained in two of the precincts. The exact number of votes cast in each precinct does not appear in the record.

The question submitted to the voters was in the fol-lowing language:

"Do you wish the prohibition law now in force in the City of Nicholasville by virtue of the election held September 20th, 1906, to become inoperative, and the sale, barter or loan of spirituous, vinous or malt liquors in said city be permitted?"

It is urged that the foregoing question does not comply with the statute, which requires that the substance of the measure to be voted upon shall be clearly stated. In this connection, it is urged that the question is so long, involved and complicated as to be practically unintelligible to the voters. The greater part of the record is taken up with the testimony of witnesses tending to show that the question was confusing and that they had great difficulty in voting their sentiments. On the contrary, a number of witnesses testified that they had no trouble in determining how to vote. It will be observed that the question follows, substantially, the language of the statute (section 2554, Ky. Stats.), and then adds the words, "and the sale, barter or loan of spirituous, vinous or malt liquors in said city be permitted." While the proposition submitted is longer than it should have been, and is not as clearly stated as it might have been, we can not say that it was so confusing that it was calculated to, and did, affect the result of the election. Even those witnesses who testified that it was confusing, with possibly one or two exceptions, had no trouble in voting their sentiments upon the question involved, although it might have taken them longer to do so than if the question had been more briefly stated. This ground of contest, in our opinion, is insufficient to justify us in setting aside the election.

The next ground of contest is that the special registration was fixed and held on a day less than five days prior to the election. By section 1495, Ky. Stats., it is provided that when an election or vote is ordered to be held or taken in any county containing any city or town belonging to a class where registration is required at any other time than the regular November election, then the county judge, or other officer so ordering said election, shall at the same time fix a day for the registration of those persons entitled to vote whose names have not been recorded on the registration books of that year, and shall require the same to be published in like manner as the time and place of said election or vote are required to be published. Registrations under this section shall be known as special registrations, and any person so registered shall be entitled to vote at all elections held prior to the next general registration. In addition to the foregoing, the section contains the following: "Registrations prior to special elections shall be held not less than five days prior to the election."

In construing this section, in the case of Early v. Rains, 121 Ky. 439, this court said:

"Appellants say that as there is nothing in the record to show that the majority was in favor of prohibition at the April, 1905, election, and that even if those who were denied the right to vote had voted, and had all voted against the proposition, still, as there is not a showing that the result would have been different, the irregularity is harmless, and ought not to be allowed to overthrow the result. The same argument extended would justify dispensing with an election altogether. For, if those opposed to the proposition were unable to produce evidence enough to show that it would have failed to carry, the argument is, in effect, that thereby it is shown that the voters' will was in favor of it and should be upheld accordingly. The Constitution and statutes provide for an election, not a trial to settle this question; the election must be by secret ballot, not by forcing the electors to disclose how they voted, nor how they intended to vote. Unless judgments of courts and boards are to be substituted for elections, the trial of a question like this is confined to determining whether there has been a substantial compliance with the law in the conduct of the election. And if there has not been to remand the question to the people concerned, where their will may be fairly and legally recorded. The failure of the county court to provide for a special registration invalidated the election held April 4, 1905. The judgment of the circuit court so holding is consequently affirmed."

We are unable to perceive upon what theory it can be said that the provision of section 1495, requiring a special registration, is mandatory while the provision requiring a special registration to be held not less than five days prior to the election is merely directory. The language in the one case is just as mandatory as in the other. Under it the county judge had the right to order a special registration and to fix it at any time more than five days prior to the election. He did not have the power to fix the special registration upon a day which was less than five days prior to the election. The general rule is that provisions in regard to the time and place of holding elections or registrations are mandatory. If the statute had fixed a certain day for special registrations, it would not be contended that a special registration could be held on any other day. While the statute in question does not

fix the day of special registration, it gives to the county judge the power only to fix the special registration on a day more than five days prior to the election. When, therefore, he fails to follow the provision of the statute and fixes the registration on a day not authorized by law, he acted entirely without authority. The Legislature evidently had some purpose in view in thus limiting the time of special registrations. Doubtless it desired to give the parties interested in the election an opportunity either to purge the registration or to investigate and ascertain whether or not those who had registered were as a matter of fact entitled so to do. In the case before us only two days intervened between the special registration and the day of the election. In such a case we shall not stop to inquire whether or not those who actually registered were as a matter of fact entitled to register. The fact is that they did register on a day other than that fixed by law. The result is the same as if there had been no registration at all. Similar provisions affecting local option elections have always been held to be mandatory. Thus it was held that, under the provisions of the act of August 6th, 1892, requiring the county judge, at the "next regular term" of the county court, after receiving the petition for an election, to make an order therefor on some day not earlier than sixty days after said application was lodged, it was necessary that the petition should be received in court and a record made of it; and an election held where the petition was received by the county judge out of court on one day, and the election ordered the next day, which was the first day of the term, was adjudged to be void. (Wilson, et al. v. Hines, et al., 99 Ky. 221.) To the same effect is Cress v. Commonwealth, 19 Ky. Law Rep. 633. And in the case of Brodie v. Hook, 135 Ky. 87, it was held that the provision of section 1456, Ky. Stats., requiring certificates and petitions of nomination to be filed with the clerk of the county not more than sixty, and not less than fifteen days before election, is mandatory, and that the clerk has no right to place the name of a candidate upon the ballot, the certificate for which has been filed within less than fifteen days of the election. The language of section 1495, Ky. Stats., is almost identical with that of section 1456. If the latter be mandatory, there is no escape from the conclusion that the language of the former section is likewise mandatory. We, therefore, conclude that the failure of the county judge to fix the time of the special registration on

a day not less than five days prior to the election rendered the election void.

The next ground of contest is based on the fact that the officers of election in two precincts agreed to dispense with the production of the certificates, and that the votes cast by those who failed to present, or to offer to present, their certificates were invalid. Prior to the amendment requiring the issuance and presentation of registration certificates the Legislature enacted a registration law in pursuance of section 147 of the Constitution. That section provides that, where registration is required, only persons registered shall have the right to vote. Thereafter section 1488, Ky. Stats., was amended so as to read as follows:

"Officers of registration shall have the same power to preserve order at the places of registration as is exercised by sheriffs of election at the polls. If the officers of registration entertain any doubt as to whether or not any person offering for registration is entitled to such registration, or if any one's right to register is challenged, citizens may be called in, not exceeding three in number, who shall be examined touching the qualifications of such person or persons who offer to register. The officers of registration shall issue a certificate of registration to each voter registering at the time he registers, showing that he has registered, and the date of his registration, and no person, who is required to register under the provisions of this act, shall have the right to vote at any election held in this Commonwealth until he shall have presented to the election officers his certificate of registration.

"Any person who has registered and whose certificate of registration has been lost or otherwise destroyed, after the registration books containing his registration have been filed with the clerk of the county court, may, upon filing his affidavit before the county court clerk, showing that fact, obtain a duplicate certificate of registration, and upon filing such an affidavit before the county court clerk, it is hereby made the duty of the said clerk to issue said certificate, for which he may charge the applicant a fee of fifty cents, and the said certificate shall entitle the person named therein to vote as if issued by the officers of registration, and for the purpose of better enabling the officers of registration to carry out the provisions of this act, it is hereby made the duty of the county court clerk to furnish with the regis-

tration books, as in this act required, a sufficient number
of printed certificates of registration to meet the re-
quirements of this act, for which he shall be paid a rea-
sonable compensation out of the county levy of the
county. All laws and parts of laws in conflict herewith
are hereby repealed.''

The validity of the registration certificate act was
attacked in the case of Yates v. Collins, 118 Ky. 682.
There it was held that the issuance of the registration
certificate was simply a part of the registration plan.
The point was made that the act would disfranchise
voters otherwise qualified. In discussing this point the
court said: ''The act is not, in our opinion, open to the
criticism that it will tend to disfranchise voters other-
wise qualified. The voter is put to no inconvenience in
obtaining the registration certificate; it is given him
when he registers, and the provision which allows him,
in the event of its loss, to procure another of the county
clerk by filing with that officer his affidavit proving such
loss, relieves the voter of the disfranchisement that
would otherwise necessarily result from its loss.'' In
the case of DeHaven v. Bohmer, 125 Ky. 800, the neces-
sity for special registration and the presentation of cer-
tificates by the voters is clearly pointed out. In the case
of Commonwealth v. Glass, 140 Ky. 589, the court said:
''Under the statute the voter can not vote unless he pre-
sents to the election officers his certificate of registra-
tion. To buy the certificate in order to prevent him from
voting is to buy him not to vote.'' But it is argued that,
inasmuch as the officers of election knew that the voters
were entitled to vote, and as none of them have been
shown not entitled to vote, the failure of the voters to
present their certificates to the officers of election was
an immaterial irregularity. The same reasoning would
permit the officers to dispense with the holding of the
registration. But surely it will not be contended that
the registration is altogether unnecessary where the of-
ficers knew that the voters are otherwise entitled to
vote. ''Where registration is required,'' section 147,
of the Constitution, says, ''only persons registered shall
have the right to vote.'' Section 1488 Ky. Stats., pro-
vides: ''And no person, who is required to register
under the provisions of this act, shall have the right to
vote at any election held in this Commonwealth until
he shall have presented to the election officers his cer-

tificate of registration." The latter provision is just as mandatory as the provision of the Constitution.

We are not inclined to hold, however, that the mere failure of the officers to examine the certificate of registration is sufficient to disfranchise the voter. If the voter presents his certificate of registration, or states that he has the certificate and offers to produce it, this will be sufficient; one or the other he must do, for it is a prerequisite to his right to vote. If he votes without presenting, or offering to present, his certificate, it necessarily follows that, under the language of the statute, he votes when he is not entitled to vote, and, therefore, his vote cannot be counted. As stated before, the record shows that there are only three precincts in the city of Nicholasville. In one of these precincts there was no presentation, or offer of presentation, by the voters of their certificates; in another, nearly all the voters voted without presenting or offering to present their certificates. The only exception in the last-named precinct was in favor of a few negroes who came in with certificates in their hands. Thus it will be seen that almost two-thirds of the voters of the city voted when they had no right to do so. An election held under such circumstances can not be upheld.

Other grounds of contest are relied upon, but, in view of the conclusion of the court, we deem it unnecessary to consider them.

Judgment reversed and cause remanded, with directions to enter judgments in conformity with this opinion.