## Brown & Proctor v. Hughes, Mayor, et al

(Decided January 20, 1911.)

## Appeal from Clark Circuit Court.

1. Local Option—Seperate Vote in City—Where Precincit Had Voted Dry—Construction of Statute.—In December, 1909, Clark county and the City of Winchester voting separately, the city voted in favor of the sale of liquors, but a vote having been taken upon the question in the Winchester precinct prior to the election in which the city voted wet, the latter election had the effect of making only such portions of the city wet as had not by separate election declared for prohibition, before the vote was taken in the city as a whole.

2. Same—Each Unit Has Option of Putting Prohibition Law Into Effect.—Each unit has for itself the option of putting the prohibition law into effect within its territory, and no larger or smaller unit can prevent it.

3. How Dry Precinct May Become Wet.—The unit of which the Winchester precinct is a part having by separate vote become wet, with the exception of this one precinct, and no separate vote having been taken in this precinct within the last three years upon the question, a vote may be taken therein at any time when asked for, as provided by section 2554 Ky. Stats., and subsequent sections bearing upon this subject.

HENRY WATSON and KOHN, BAIRD, SLOSS & KOHN for appellant.

J. M. STEVENSON and F. H. HAGGARD for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In 1896 a vote was taken in the county of Clark on the question as to whether or not spirituous, vinous or malt liquors should be sold, and a majority of the votes cast were against the sale. The county was dry under this election until December, 1909, when a vote was again taken in the entire county, and a separate vote granted in the city of Winchester, a city of the fourth class. At this last named election the county again voted dry and the city voted wet by a majority of 358 votes.

Following this election an application was made by the owners of the Brown-Proctoria Hotel, in the Winchester precinct in Winchester, for a license to sell spirituous, vinous and malt liquors. The application was denied and a suit was brought in the circuit court to compel the mayor and town council to issue the license. They defended on the ground that, after the general election

in 1896, when the entire county voted dry, an election was held in the Winchester precinct to take the sense of the voters as to whether or not spirituous, vinous or malt liquors should be sold therein, and a majority of the votes at said election was cast against said sale, so that, by separate vote, the Winchester precinct had declared against the sale.

It appears that an election in this precinct upon this question was held in 1898, another in 1899, and still another in 1902, in each of which, it is alleged, a majority of the votes cast was in favor of prohibition. The election of 1898 is attacked on the ground that it was held within less than three years after the election had been held in the entire county, in 1896. The validity of the second election is attacked upon the same ground, that is, that it was held within less than three years after the election of 1898. A vote having been taken in the entire county on June 27, 1896, and the county having voted dry, it was unlawful, under the statute then in force, for a vote to be taken either in the county as a whole or in any subdivision thereof within less than three years from that date. Commonwealth v. Bottoms, 22 Rep., 410; Tousey, et al. v. Stites, et al., 23 Rep., 1738. Hence the election held in June, 1898, was void, and, being void, cannot be taken into consideration in determining the validity of the election held on June 28, 1899. This last election, having been held more than three years after the date upon which the general election for the entire county was held, the objection urged to its validity is not well taken. This election was in all respects legal and valid.

It becomes unnecessary to pass upon the validity of the election in 1902, for, accepting appellant's contention that it cannot be considered because there is no record showing the result of the vote, the statute of the precinct is fixed by the election in 1899.

The question then presented is, does the election in 1909 in the city of Winchester make each precinct in the city wet and authorize the sale of liquor therein, or, has that election the effect of making only such portions of the city wet as had not theretofore by separate vote declared for prohibition. So much of the act of 1906 as is pertinent to a consideration of this question is as follows:

"If, at an election held for such entire district or city, the majority of legal votes cast shall be in favor of the sale, barter or loan of spirituous, vinous, malt or

other liquors, then the status in the several precincts thereof shall remain as it was before said election; but if the majority should be against the sale, then the sale, barter or loan of such liquors shall be unlawful in every portion of said district or city.''

The validity of this statute in its entirety was passed upon by this court in the case of the Board of Trustees of the Town of New Castle v. Scott, 101 S. W., 944, and in discussing the validity of the particular section under consideration, it is there said:

''There is yet another view of the subject which we must assume was in the mind of the convention. The liquor traffic had then (in 1891) come to be regarded as one of the most serious evils of the age, if not the most sinister menace to society that was known. Every civilized country regulated it, or prohibited it. Enlightened public opinion everywhere has constantly grown in favor of greater restrictions upon it. No one was then saying that governmental control of the traffic should be relaxed in the least. Every argument pointed to a more stringent control. The main division in the controlling public thought was not upon whether there should be greater or less restriction, but as to how to put on the surer and greater restriction; whether a high license, or prohibition. The convention was not prepared to say that prohibition throughout the State should be attempted, but recognized that the people of the communities immediately affected by the traffic should for themselves say whether they would have prohibition. At the time the Constitution was adopted, prohibition prevailed in a number of the counties and towns of the State by virtue of special laws previously enacted by the Legislature. Section 61 of the Constitution, which required the Legislature to provide by general law for local option elections, was careful to say that the previous special statutes for certain localities were not repealed by that section. All those special statutes provided prohibition in the localities specified. The purpose of the convention is shown by this action to have been not inimical to local prohibition, but rather in its favor. Our construction is, in view of these conditions and the language used, that the Constitution meant that the local unit named should control within their own territory the question of prohibition; that each should have the privilege of saying conclusively that prohibition should prevail, but not conclusively that it should not. This construction harmonizes the sections so as to allow all of it to

stand, and to give equal force and power to each unit named. If a precinct votes that prohibition shall prevail within its territory, it is not competent for any other unit to gainsay the matter. If, however, the precinct votes against prohibition, that leaves the question, so far as it is concerned, as it was before any vote was ever taken on it. But, if the town or city which includes the precinct in question subsequently votes in favor of prohibition, the whole town or city thereby becomes dry. Or, if the county subsequently votes dry, the same result as to the county is attained. But if the county or town vote wet, and the precinct has previously voted dry, the precinct controls for itself. Thus each unit for itself has the option of putting the prohibition law into effect within its territory, and no larger or smaller unit can prevent it. This is the only construction of the section that occurs to us, or that has been pointed out, that will allow equal and uncontrolled power to every one of the five units named in the section."

The language used in this opinion is susceptible of no double construction, and in our opinion is conclusive of the question here under consideration. The construction of this statute adopted in this opinion was approved by this court in the case of Eggen v. Offutt, 128 Ky., 314.

Under the vote of 1909 every precinct in the city of Winchester that had not theretofore by separate vote declared for prohibition became wet territory. As the Winchester precinct had by separate vote fixed its status prior to the election of 1909, under the statute, as interpreted by this court in the cases of Board of Trustees of Town of New Castle v. Scott and Eggen v. Offutt, it remained a dry precinct, and must so continue until by a vote of its people this status is changed.

The question is asked, when and how this may be done. The unit of which this precinct is a part having, by a separate vote, become wet territory, with the exception of this one precinct, and no separate vote having been taken in this precinct within the last three years upon this question, a vote may be taken therein at any time when asked for, as provided by section 2554 and subsequent sections of the Kentucky Statutes bearing upon this question; that is, upon application by a written petition, signed by a number of legal voters of said precinct equal to twenty-five per cent. of the legal votes cast therein at the last preceding general election. When such application is filed with the county judge, it be-

comes his duty at the next regular term of his court after receiving same to make an order on his order book directing an election to be held in said precinct on some day named in the application or selected by him, not earlier than sixty days after the date upon which said application is filed in his court. Said election must not be ordered to be held upon a day upon which an election is held for the entire county or city; nor will it be ordered until the cost thereof is paid into court, as provided by section 2559, Kentucky Statutes. If, under an election so ordered and held in accordance with the statutory provisions above referred to, a majority of the legal voters of said precinct vote in favor of the sale of liquor therein, then the precinct becomes wet, and will remain wet until its status is again changed by a vote of the people, and this vote may not be taken in the precinct oftener than once in every three years. Hence, if the precinct votes wet, it must remain so for at least three years, unless the unit of which it is a part votes upon the question before the expiration of the three years, as it might do, and votes dry. In this event the precinct would at once become dry along with the remainder of the unit.

The case of May v. Ferguson, 122 S. W., 208, relied upon by appellant, is not in point. The question in that case was the right of a magisterial district, in which a city of the fourth class was located, to take a vote on the prohibition question after the county of which it was a part has voted dry. The court held that the county, including all of the magisterial district without the city limits, was one unit, and as the city, on the same day that the vote was taken in the county, had applied for and been granted a separate vote, it became another unit; and that there was no authority in law for calling an election in the magisterial district. The question involved in this case was not raised or considered in that case.

We are of the opinion that the conclusion reached by the chancellor was in harmony and accord with the opinions of this court to which we have referred, and his judgment is, therefore, affirmed.