The whole court sitting.

---

## Taylor, et al. v. Cook, et al.

(Decided February 28, 1912.)

## Appeal from Jessamine Circuit Court.

1. Local Option—Election.—The law contemplates the county as the primary unit, but whenever it contains a city of the first, second, third or fourth class, the city may, by taking a separate vote within the city on the same day when the vote is taken in the county, segregate itself from the county, into, and become a separate unit; but, if under such a county vote the city fails to avail itself of its right to take a separate vote upon the same occasion, it is bound by the vote of the county, as a whole.

2. Local Option—Election—City May Become Separate Unit.—Where the several precincts, which made up an entire county, had become "dry" by virtue of separate elections held in the several precincts under special local option laws in force prior to the enactment of the present laws upon that subject and no election had been held thereunder in the county as a whole, a city of the fourth class in said county may, upon a proper petition, hold an election to determine whether spirituous, vinous or malt

liquors shall be sold within the city, although no election be
held on the same day by the county, as a whole.

3. Local Option—Election—Void Election Not To Be Counted.—
   Where the statute provides that elections under the local option
   laws shall not be held oftener than once in three years, a former
   election which had been declared void by the courts is not to
   be considered in estimating the time when another election may
   be held.

4. Local Option—Election—Form of Question Submitted.—Where
   the question as presented by the ballot, read, "Do you wish the
   prohibition law now in force in the city of Nicholasville, by virtue
   of the election held September 20, 1906, to become inoperative?"
   the form of the question was not so misleading, contradictory or
   confusing as to affect the result of the election, or render it in-
   valid.

E. B. HOOVER and EMMET PURYEAR for appellants.

N. L. BRONAUGH and J. H. WELSH for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Nicholasville is a city of the fourth class in Jessa-
mine County. At an election held September 20, 1906,
in Nicholasville, to take the sense of the voters as to
whether spirituous, vinous or malt liquors should be sold
within that city, the result was against the sale of liq-
uors. At a subsequent election, held February 15, 1910,
within the same territory, it went "wet" by a majority
of 34 votes. That election, however, was contested and
held void, because no registration of the voters had been
taken previous to the election, as is required by the stat-
ute. (Taylor v. Betts, 141 Ky., 138.)

On April 14, 1911, another election was held within
the same territory of Nicholasville, and it again went
"wet" by a majority of 65 votes. A contest was insti-
tuted, which resulted in the lower court sustaining the
election, and from that judgment this appeal is prose-
cuted.

Beginning as early as 1874, and ending in about 1882,
the several precincts of Jessamine County, including
the city of Nicholasville, had become "dry" by virtue
of separate elections held in the several precincts under
the special local option laws then in force. That was
the status of the several precincts of the county and city
upon the adoption of the present Constitution, and the
subsequent local option laws thereunder; and, it is in-
sisted that where the precincts, or any of them, embraced

within the city of Nicholasville had thus become "dry," a vote in the whole city is insufficient to change the status of that precinct, and that the status of such a precinct can only be changed by the vote of the precinct.

By Section 2554 of the Kentucky Statutes, an election may be held in a county, city, town, district or precinct for the purpose of taking the sense of the legal voters upon the proposition whether or not spirituous, vinous or malt liquors shall be sold therein. And, by Section 2563, it is provided that such an election shall not be held in any county, city, town, district or precinct oftener than once in every three years.

Section 2560 of the Kentucky Statutes, known as the "Cammack Amendment" of 1906, reads as follows:

"No election in any town, city, district or precinct of a county shall be held, under this article, on the same day on which an election for the entire county is held, except that cities of the first, second, third and fourth classes may hold an election on the same day on which an election for the entire county is held. When an election is held in an entire county and a majority of the legal votes cast at said election are against the sale, barter or loan of spirituous, vinous, malt or other intoxicating liquors, then it shall not be lawful to sell, barter or loan any such liquors in any portion of the county. If at such an election for the entire county the majority of the legal votes cast are in favor of the sale, barter or loan of any such liquors, such election shall not operate to make it legal to grant license to sell, barter or loan such liquors in any territorial division of such county from which the sale, barter or loan has been excluded by an election held under this article, or by special act, but the status of such territorial division shall remain as if no such election had been held.

"No election shall be held in any election precinct under this act on the same day on which an election is held for the district or city of which the precinct is a part. If at an election held for such entire district or city, the majority of legal votes cast shall be in favor of the sale, barter or loan of spirituous, vinous, malt or other liquors, then the status in the several precincts thereof shall remain as it was before said election; but if the majority should be against the sale, then the sale, barter or loan of such liquors shall be unlawful in every portion of said district or city."

And Section 2561 further provides as follows:

"If, at any election provided for in this act, a majority of the legal votes cast are against the sale, barter or loan of said spirituous, vinous or malt liquors, the sale, barter or loan of any such liquors shall be unlawful in such county, city, town, district or precinct, as the case may be, except as hereinbefore provided, unless at a subsequent election held under this act a majority of the legal votes cast shall be in favor of the sale of said liquors."

The several sections of the statutes have been frequently construed by this court, and their operation and effect have been made plain beyond any doubt by those adjudications. O'Neal v. Minary, 125 Ky., 571; Yates v. Nunnelly, 125 Ky., 664; Town of New Castle v. Scott, 125 Ky., 555; Eggen v. Offut, 128 Ky., 318; May v. Ferguson, 135 Ky., 411; Edwards v. Porter, 141 Ky., 314; Brown & Proctor v. Hughes, 141 Ky., 695, and Hill v. Motley, 143 Ky., 158.

Without reviewing those cases in detail, which we deem entirely unnecessary, it is sufficient to call attention to some general propositions that have been established thereby. It has been repeatedly held that where a precinct is "dry" by a vote of that precinct, no vote of any greater unit can make it "wet;" but, where it is "wet," the vote of a greater unit embracing the precinct, can make it "dry." Furthermore, the law contemplates the county as the primary unit, but that whenever it contains a city of the first, second, third or fourth class, the city may, by taking a separate vote within the city on the same day when the vote is taken in the county, segregate itself from the county, into, and became a separate unit; but, if under such a county vote the city fails to avail itself of its right to take a separate vote upon the same occasion, it is bound by the vote of the county, as a whole.

In May v. Ferguson, supra, the court said:

"Where territory is wet where prohibition has not theretofore been enforced, any subdivision of a county may vote upon the question of establishing prohibition therein, but no subdivision of a county, other than cities of the first, second, third or fourth class may take a vote upon the question at all when prohibition is already enforced within such territorial limit. In other words, where no prohibitory laws are in force in the county, any magisterial district, voting precinct, or town of any class

may vote to establish prohibition within the limits of such magisterial district, voting district, voting precinct, or town, but, where prohibition has been established in the entire county, a different rule obtains. A unit has been established and the vote can never again be taken in any subdivision of that county other than in some one of the cities belonging to the excepted class, unless it is taken in the entire county.''

In the case at bar no unit had been established in Jessamine County under the present local option law, prior to 1906; but the election of September 20, 1906, under which Nicholasville became ''dry,'' separated the town of Nicholasville from the rest of the county, and made it a separate unit. That election has never been contested, and is admitted to have been a valid election, and in full force, whereby the city remained entirely ''dry,'' until the subsequent election of April 14, 1911, was held. After the election of 1906, the city of Nicholasville stood as a separate unit, in which an election under the local option law could have been held at any time after the expiration of three years. The question here raised was, in effect, passed upon in Taylor v. Betts, supra, wherein this court annulled the election held in Nicholasville in 1910, upon the sole ground that no registration of voters had been held, as required by the statute. If the court had been of opinion that the election then held in and for the city of Nicholasville alone was invalid for the reason now presented, it would doubtless have disposed of the case upon that point rather than upon a minor point. On the contrary, the question now argued was necessarily controlling in the Taylor and Betts case, and was not thought to have sufficient weight to be considered by the court. The election of 1911 was, therefore, legally held, and must stand unless it is held invalid for some other reason.

2. It is insisted, however, that under the present statute an election could not be legally held in the city of Nicholasville unless an election was held in the entire county at the same time, and that until a vote is taken in the entire county, and the county thereby becomes established as the unit, the city is unable to take a vote alone and thus segregate itself from the county and become a separate unit. This, however, is not a proper construction of the statutes above quoted.

Section 2554 of the Kentucky Statutes gives the right of the voters of any county, city, town, district or pre-

cinct, upon a proper petition, to vote upon the prohibition question, and the only restriction placed upon any of these subdivisions of a county in the manner of holding such an election, is found in Section 2560, which provides that no such election shall be held on the same day at which an election for the entire county is held, "except that cities of the first, second, third and fourth class may hold an election on the same day on which an election for the entire county is held." If an election is called for the entire county, none of the subdivisions thereof can hold an election on the same day except one of the cities of the excepted classes; and it does not have to hold an election on that day unless it wishes to maintain itself as a separate unit. It is manifest, therefore, that the purpose of permitting cities to hold a separate election upon the same day of the county election, is to avoid the effect of the county vote, which would otherwise control the city. The statute evidently makes cities of the four classes mentioned, units for their own government in this respect, provided they take advantage of the procedure by which their segregation may be obtained. This may be obtained, not only at an election held on the same day that the county election is held, but on some other day, provided there has not theretofore been an election for the entire county in which the city did not separately participate, or having participated, failed to segregate itself as a separate unit. If the unit either for the county or the city has been once separately established, it remains established until changed by the vote of that unit; but where the county has never voted as a whole under the present law, and the city has not therefore had an opportunity of segregating itself into a separate unit, it is not required to wait until the county, as a whole, votes, but it may have a separate election for the purpose of determining that question for the city alone.

3. It is insisted, however, that the election of April 14, 1911, was illegal, because it was held within three years after the former election of February 15, 1910, had been held. The statute, however, does not contemplate the consideration of a futile attempt to hold an election; and, since the election of February 15, 1910, was held to be void by this court, and of no force or effect whatever, it can not be considered as an election for any purpose. This precise question was before this

court in Brown & Proctor v. Hughes, 141 Ky., 695, where the court said:

"A vote having been taken in the entire county on June 27, 1896, and the county having voted 'dry,' it was unlawful under the statute then in force for a vote to be taken either in the county as a whole, or in any subdivision thereof, within less than three years of that date. Hence, the election held in June, 1898, was void, and being void, can not be taken into consideration in determining the validity of the election held on June 28, 1899. This last election having been held more than three years after the date upon which the general election for the entire county was held, the objection urged to its validity is not well taken."

4. Furthermore, it is insisted that the proposition submitted to the voters upon the official ballot was so misleading, contradictory and confusing as to render the election invalid. The question submitted was in the following form: "Do you wish the prohibition law now in force in the city of Nicholasville, by virtue of the election held September 20, 1906, to become inoperative?" The statute (Sec. 2554) requires the court to submit "the proposition whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or whether or not any prohibition law in force in any county, city, town, district or precinct, by virtue of any general or special act or acts, shall become inoperative; and counties, cities, towns, districts and precincts in which the sale, barter or loan of spirituous, vinous or malt liquors are now prohibited may have a vote thereon, under the provisions of this act."

In Taylor v. Betts, supra, wherein the court passed upon the validity of the election in Nicholasville in 1910, the question submitted was as follows: "Do you wish the prohibition law now in force in the city of Nicholasville, by virtue of the election held September 20, 1906, to become inoperative, and the sale, barter or loan of spirituous, vinous or malt liquors in said city be permitted?" It was there urged that the question did not comply with the statute, and was misleading. But in passing upon the sufficiency of the question there submitted, this court said:

"It will be observed that the question follows, substantially, the language of the statute (Section 2554, Ky. Sts.), and then adds the words, 'and the sale, barter or loan of spirituous, vinous or malt liquors in said

city be permitted.' While the proposition submitted is longer than it should have been, and is not as clearly stated as it might have been, we can not say that it was so confusing that it was calculated to, and did, affect the result of the election. Even those witnesses who testified that it was confusing, with possibly one or two exceptions, had no trouble in voting their sentiments upon the question involved, although it might have taken them longer to do so than if the question had been more briefly stated. This ground of contest, in our opinion, is insufficient to justify us in setting aside the election.''

The same result must follow here.

Finally, it is insisted that the petitioners did not deposit with the county judge money sufficient to pay for the printing and posting advertisements, and the fees of the clerk as is required by Section 2559 of the Kentucky Statutes. The evidence clearly shows, however, that $50 was deposited with the county judge, and that it took less than half of that sum to pay the expenses specified in the statute.

The judgment of the lower court will have to be affirmed.