## Cooper, et al. v. Cardwell, et al.

(Decided January 21, 1913.)

### Appeal from Marion Circuit Court.

1. Intoxicating Liquors—Local Option Election—Petition for Election —Sufficiency of.—A petition for the holding of a local option election, within a city, is sufficient, if signed by a number of legal voters residing in said city, equal to twenty-five per cent of the legal voters therein, as shown by the last preceding city election, without regard to whether the petitioners reside in one or more of the precincts of said city.

2. Intoxicating Liquors—Local Option Election—Contest—Evidence.— Evidence examined and held insufficient to support the charge of such bribery, fraud, intimidation, force or violence as to invalidate the election.

3. Opinion—When Decisions on Questions of Law not Overruled in.— Decisions on questions of law cannot be overruled by loose expressions of the court, used in the course of opinions in later cases in which such questions were not considered, or before the court.

H. W. RIVES, for appellants.

CHAS. C. BOLDRICK and S. A. RUSSELL, for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On May 2, 1912, an election was held in Lebanon, Marion county, to take the sense of the voters of said town as to whether or not spirituous, vinous, or malt liquors should be sold, bartered, or loaned, within the corporate limits thereof. Upon a canvass of the vote, it was found that 389 persons had voted in favor of the proposition, and 345 against, thus giving a majority of forty-four in favor of the sale. A contest was at once instituted by those opposed to the sale of liquor in said town. This contest was heard by the county judge and the two nearest magistrates. After considering the case, they decided against the contestants. An appeal was promptly taken to the circuit court and the case there elaborately prepared for trial. After full consideration, the circuit judge decided against contestants, and from his judgment entered thereon, this appeal is prosecuted.

Two questions are raised, one of law and one of fact. First, it is insisted that the election is void, because the petition, provided for by section 2554, Kentucky Statutes, upon which the county judge was authorized and directed to order an election held, was not signed by twenty-five per cent of the legal voters in each precinct in the city. It is conceded that the petition was signed

by a number, greater than twenty-five per cent. of the legal voters in the city, as evidenced by the number of votes cast at the last city election. But, it is urged that the provisions of the statute are not satisfied, unless said petition is signed by twenty-five per cent. of the legal voters residing in each precinct, or political subdivision, of the city. This section of the statute has been three times construed by this court. In the case of Nall v. Tinsley, 107 Ky., 441, the question was first raised. Those opposed to the sale of liquor raised the identical question, which it here presented, and this court in disposing of it said:

"A careful reading of the section shows that the first clause of it relates to legal voters in each precinct, to be affected by the election. The territory referred to is a precinct or precincts which compose the political subdivision of a county. The second clause relates to city or town elections. When it is proposed to have an election in a city or town, the petition must be signed by a number of legal voters, equal to twenty-five per cent. of those cast at the last city or town election.

"When the election is proposed to be held in a territory comprising precincts, the petition should be signed by a number of voters equal to twenty-five per cent. of the votes cast in each of the precincts at the last preceding general election.

"Although there may be a number of voting places in a town or city, still it is not necessary that the petition should be signed by a certain per cent. of those living within the prescribed territory within the town or city; but it means a number equal to twenty-five per cent. of those who cast their votes at the last city or town election; so we think counsel is in error in saying that the petition is not sufficient."

In Mahan v. Commonwealth, 21 Rep., 1807, the same question was again before this court, and, upon consideration, it adhered to the construction placed upon section 2554 in Nall v. Tinsley, citing said case with approval. In the still later case of Early v. Rains, 121 Ky., 439, the same question was here again and a construction, different from that which this court had placed upon section 2554 in the cases above cited, was sought; but the court adhered to its former ruling, as appears in the following excerpt from said opinion:

"It was the duty of the county court of Whitley

county to order the election for the whole town of Cor-
bin, twenty-five per cent. of the legal voters of that
town, based upon the last preceding general election,
having petitioned for it, whether or not the petitioners
lived in one or more precincts, or in one or more coun-
ties. It is enough if they are citizens and legal voters
of the town.''

But, it is insisted, that the rule therein announced
has been departed from in the more recent cases of New
Castle v. Scott, 125 Ky., 545; Eggen v. Offutt, 128 Ky.,
314; and Brown & Proctor v. Hughes, 141 Ky., 695. A
careful reading of these opinions shows that, in neither,
was the question as to the sufficiency of the petition for
the election in issue. In New Castle v. Scott, the sole
question was the constitutionality of what is known as
the Cammack bill. In Eggen v. Offutt, the question
was whether or not, after a county has, as a whole,
voted wet, a magisterial district of the county, within
three years thereafter, could hold another election and,
by a majority vote, close the saloons in that magisterial
district. In Brown & Proctor v. Hughes, the question
was, where a city had voted wet, does it have the effect to
make a precinct in the city wet, that previously voted
dry? The question of the sufficiency of the petition not
being before the court, it cannot be seriously contended
that any loose expression of the court, used in the course
of the opinion, was intended to overrule the line of de-
cisions, to which we have referred, where it was held
that, when it is desired to call an election on local option
in a city or town, the ends of the law are satisfied if the
application therefor is signed by twenty-five per cent.
of the legal voters in said town, as shown by the last
preceding city election, and it is immaterial in what
part of the city this twenty-five per cent. may reside.
They may reside in only one precinct, two precincts,
or in several. It is sufficient if they live within the city
limits. The petition was sufficient.

The next and only remaining question is, does the
evidence show such bribery, intimidation, fraud, force
or violence in the conduct of the election as to justify
the chancellor in setting it aside and nullifying the re-
sults on this account? We have examined the record
with care. It is apparent that each side made a most
determined effort to keep the other from winning; the
champions of the respective causes, in their zeal and

enthusiasm, left nothing undone in their efforts to succeed; meetings, public and secret, were held by both sides. Each side brought every influence, of which it was capable, to bear upon the citizens in an effort to influence votes. Not only was all of the local talent employed, but the services of many people living beyond the city, and even the county, were enlisted. Excitement ran high, but, in spite of this condition, the election passed off comparatively quietly. While some slight irregularities have been shown, they are, as well said by the learned trial judge, wholly insufficient to invalidate the election.

In support of the charge that wholesale bribery was resorted to by the "wets," it is shown that many negroes, who were not in the habit of having money, were seen in the possession of new five-dollar bills, upon or shortly after the day of the election, but it is not shown that they received this money in consideration of their votes, or from whom they received it, or how they voted. If the effort put forth in behalf of a cause is to be received as an indication of the source from which this money came, it might, with as much propriety, be charged up to the account of the one side as to that of the other. The only evidence of the improper use of money, if it might be termed such, is that of some four or five witnesses, who say that they were paid for their services on election day. The chancellor was of opinion that, inasmuch as it was shown that the service on their part consisted, primarily in standing in line until they had an opportunity to vote, and perhaps in aiding in keeping others in line, these votes should be thrown out, and in rendering his opinion, the votes of these men were rejected; but this did not change the result and still left the "wets" a safe majority.

The evidence of fraud, intimidation, force and violence is not of sufficient character or importance to merit serious consideration, and is wholly insufficient to support the charge that there was such fraud, intimidation, force or violence as to invalidate the election.

Upon a careful consideration of the record, we are of opinion that the conclusion reached by the chancellor is correct, and the judgment is affirmed.