Francis E. DUNN, Individually, etc.,
et al., Appellants,

v.

MARSHALL COUNTY HOSPITAL DIS-
TRICT OF the COUNTY OF MAR-
SHALL, Kentucky, et al., Appellees.

Supreme Court of Kentucky.

Nov. 12, 1976.

William H. Cunningham, Eddyville, Earl
T. Osborne, Paducah, for appellants.

Joseph R. Rubin, Franklin P. Hays, Louis-
ville, Martin W. Johnson, Pal G. Howard,
Benton, Dandridge F. Walton, Paducah, for
appellees.

JONES, Justice.

The Fiscal Court of Marshall County ap-
proved a plan for establishing a Marshall
County hospital district and for its financ-
ing. A declaratory judgment action was
instituted by the appellants, Francis E.
Dunn, and others, to test the validity of the
proposal. The appellants, R. W. Blalock,
and others, were permitted to intervene for
the same purpose. The trial court approved
the proposal. In addition, the trial court

sustained the appellees' motion for summary judgment. This appeal is from that judgment.

The appellants present three issues for this court's determination. They contend: (1) that the election of November 6, 1973, where the voters of Marshall County approved Marshall County's authority to impose an annual special ad valorem tax of four cents on each one hundred dollar's worth of property assessed for local taxation for the maintenance and operation of the Marshall County Hospital District was invalid; (2) that Marshall County Hospital District had no right to form the Marshall County Public Hospital District Corporation to accomplish its plan of financing; (3) the Marshall County Hospital District had no right to create a holding company to finance the acquisition of the Benton Memorial Hospital and to retire the general obligation bonds of the city of Benton. They contend that such action is discriminatory to Marshall County residents living outside the city of Benton.

In order for a proper resolution of the issues presented, it is necessary to summarize the pertinent facts.

On August 21, 1973, a certified petition of over 100 names of qualified voters was filed with the Fiscal Court of Marshall County. That petition requested the Fiscal Court of Marshall County to adopt a resolution submitting to the voters of Marshall County the question of whether a Marshall County Hospital District should be established, and a special ad valorem tax be imposed for the maintenance and operation of the district, "not to exceed ten cents on each one hundred dollars of assessed valuation of all property in the county."

On the same day that the petition was filed, the fiscal court adopted such a resolution. It ordered an election to be held at the general election on November 6, 1973, to determine whether the voters of Marshall County were in favor of such resolution. The resolution was properly advertised as required by the publication statute. KRS 424.130(1)(d). On September 25, 1973,

a resolution was introduced to amend the resolution of August 21 from "not to exceed ten cents" to "a special ad valorem tax of four cents." The fiscal court determined that the imposition of four cents on each one hundred dollar's worth of property assessed for taxation was all that was necessary to establish and maintain the Marshall County Hospital District. That resolution was adopted. Notice as to the change of the resolution was properly advertised. At no time, during these proceedings or afterwards, was any protest made.

The question placed on the ballot and advertised to be voted upon, was as follows:

"Are you in favor of Marshall County, Kentucky, participating in a hospital district composed of Marshall County, for which Marshall County shall have the authority to impose an annual special ad valorem tax of four cents (4¢) on each One Hundred Dollars ($100.00) worth of property assessed for local taxation in the District for the maintenance and operation of the Marshall County Hospital District?"

Opposite such question were placed the words "yes" and "no" on the voting machines.

The voters of Marshall County cast 2,318 in favor of the question and 1,261 votes against it.

On November 20, 1973, a resolution was adopted by the Fiscal Court of Marshall County acknowledging receipt of certifications establishing that the voters had approved the question. The resolution approved the establishment of a hospital district and the levying of an annual special ad valorem tax of four cents on each one hundred dollars of assessed valuation for the operation and maintenance of the district. The resolution recommended to the Commissioner of Health of the Commonwealth of Kentucky that the commissioner established the Marshall County Hospital District in accordance with KRS 316.320.

An order was entered by the Commissioner, Bureau of Health Services, on February

19, 1974, establishing the Marshall County Hospital District for the medical service area of all of Marshall County.

On May 7, 1974, a resolution was adopted by the Fiscal Court of Marshall County appointing five members to serve as the initial Board of Trustees for the hospital district. The resolution also approved the creation of a "holding company," to be known as the Marshall County Public Hospital District Corporation. This was for the purpose of enabling the corporation to finance the cost, not otherwise provided, of the acquisition and construction of an addition to the Benton Memorial Hospital. The issuance of the corporation's first mortgage bonds were to be secured by the hospital property pursuant to the "holding company plan of financing." The resolution also designated as members of the corporation, the three initial officers of the Board of Trustees of the Marshall County Hospital District.

On August 12, 1974, the Board of Trustees of the Marshall County Hospital District met for the purpose of organization. The terms of office of the commissioners were confirmed, officers were elected, and a resolution was adopted finalizing the plan for financing.

The Marshall County Hospital District created a holding company which was to act as its agent. The holding company was authorized to purchase the Benton Memorial Hospital. The purchase price was to be covered by bonds secured by the acquired property. In turn, the holding company was to lease the hospital to the Marshall County Hospital District. The rental payments were to be used to retire the newly issued bonds. The lease was to be renewed each year at the option of the Marshall County Hospital District. As part of the agreement, the holding company assumed the obligations of the city of Benton to retire the original bonds issued to finance the original construction of the Benton Memorial Hospital. When the bonds were paid and the new addition built, the holding company was to convey the Benton Memo-rial Hospital properties to the Marshall County Hospital District.

This court now directs its attention to the issues presented by the two groups of appellants.

(1) *The election*

In this period of inflation the mention of the word "taxes" raises the dander of most citizens. It is obvious that the voters of Marshall County felt otherwise. The overwhelming vote of Marshall County citizens in favor of the proposal indicates the need for a hospital district.

■ This court is of the opinion that it was not necessary to state, at the time the election was called, the exact amount of the tax which would be levied. It was appropriate at that time to provide that the tax not exceed 10¢ on each $100.00 worth of property assessed for local taxation. See KRS 216.317(1)(a). There is no merit to the appellant's argument that the fiscal court's changing the amount of ad valorem tax from "not to exceed 10¢" to the exact amount of 4¢ per $100.00 of assessed property after the 60-day deadline period had expired violated KRS 216.317. The Fiscal Court of Marshall County had the right under the statute to set a definite amount as long as that amount did not exceed 10¢ per $100.00 assessed valuation of the property in Marshall County. Since the fiscal court determined that 4¢ per $100.00 of assessed valuation of property was needed to maintain the hospital district, this court is of the opinion that the Marshall County Fiscal Court complied with the provisions of KRS 216.317(b).

■ Furthermore, this court is of the opinion that the appellants cannot now complain that the election was invalid. They could have challenged the election within 30 days after it was held. See KRS 122.140 (now KRS 120.250). Having failed to challenge the election within the required time, the appellants are now barred from contesting it.

(2) *The financing*

Appellants contend that KRS 216.353, providing that hospital districts "may issue revenue bonds pursuant to KRS Ch. 58, in addition to all other methods *provided by law*," means that before a plan may be used other than Ch. 58, there must be a statute providing the method. They also argue that KRS 216.335(7) is not broad enough to authorize a board which governs the hospital district to create a nonprofit corporation acting as a governmental agency for the construction and equipping of a hospital or hospitals and leasing them to the district. A reading of the statute convinces this court that KRS 216.335 specifically and clearly outlines the governmental policy of a hospital district. The portions of the statute pertinent to the issue under consideration is as follows:

"The government of the hospital district shall be vested in the board which shall have general control of the property and affairs of the district and shall have all the powers necessary to carry out the purposes of KRS 216.310 to 216.360 including, but not confined to, the following:

"(1) To construct, acquire, add to, maintain, operate, develop and regulate, sell and convey all lands, property rights, equipment, hospital facilities and systems for the maintenance of hospitals, buildings, structures and any other facilities;

\*       \*       \*       \*       \*       \*

"(3) To receive, acquire, hold, manage, expend, sell and convey donations and bequests of real and personal property for hospital purposes within the district;

"(4) To establish and maintain a public hospital or hospitals in the district and where necessary make provision for education of needed personnel to operate such hospitals;

"(5) To lease existing hospital or hospitals and equipment and other property used in connection with the operation of a hospital, and to pay such rental therefor as the board shall deem proper;

"(6) To enter into contracts and agreements with any person or corporation, public or private, affecting the affairs of the district, including contracts with cities, counties, other municipalities, the commonwealth or the United States of America and any of its agents or instrumentalities;

"(7) *To enter into contracts with a nonprofit corporation acting as a governmental agency for the construction and equipping of a hospital or hospitals, and the leasing of the same to the district*; (Emphasis added)

\*       \*       \*       \*       \*       \* "

■ The appellants, Blalock, et al., contend that KRS 216.335(7) only permits the hospital district to enter into contracts with nonprofit corporations acting as governmental agencies for the construction, equipping and leasing of hospital facilities. They contend that it does not authorize such contracts for *financing the facilities.* This court is of the opinion that they construe the statute too narrowly. Blalock apparently overlooked the word "acting" in KRS 216.335(7). The question, as this court views it, is whether or not the nonprofit holding corporation will be "acting" as a governmental agency for the construction and equipping of a hospital. This court is of the opinion that under the provisions of KRS 216.335(7) the "holding corporation" does not have to be a governmental agency; it need only act as one.

(3) *Discrimination*

■ Finally, appellants argue that the use of the tax money by the "holding corporation" to acquire the Benton Hospital, which was financed by the city of Benton, is discriminatory. They contend that those bonds should be paid by the taxpayers of the city of Benton. This court is of the view that the trial court, in a well-reasoned opinion, effectively answered the argument of discrimination in the following manner:

"When the proposed plan is consummated, the existing hospital acquired from the city of Benton, Kentucky, will be for

the *benefit of all residents and taxpayers of the district which comprises Marshall County . . . ."*

In the past this court has upheld the validity of financing plans similar to the one presented here; *Booth et al v. City of Owensboro,* 274 Ky. 325, 118 S.W.2d 684 (1938); *Warren County Fiscal Court v. Warren County Tuberculosis Sanitorium Corporation,* Ky., 272 S.W.2d 331 (1954); *Sizemore v. Clay County et al,* 268 Ky. 712, 105 S.W.2d 841 (1937); *Baker v. City of Lexington,* Ky., 273 S.W.2d 34 (1954).

The judgment is affirmed.

All concur.