John W. ROBINSON, Appellant,

v.

Bremer EHRLER, Jefferson County Judge/Executive, et al., Appellees.

Bremer EHRLER, Jefferson County Judge/Executive, et al., Appellants,

v.

John W. ROBINSON, Appellee.

Supreme Court of Kentucky.

May 23, 1985.

Rehearing Denied July 3, 1985.

Stephen R. Schmidt, Brown, Todd & Heyburn, Louisville, for appellant/appellee Robinson.

N. Scott Lilly, Louisville, for appellees/appellants Bremer Ehrler, et al.

LEIBSON, Justice.

This is an appeal from an Opinion and Order of the Jefferson Circuit Court in two consolidated cases attacking the validity of the election held November 6, 1984 returning Jefferson County Fiscal Court from a commissioner to a magisterial form of government. The case also challenges the validity of post election procedures followed to implement the result of the election.

The power to hold an election to change Fiscal Court back from commissioner form to the former magisterial form is statutory. KRS 67.050 enacted in 1892 provided a mechanism for a referendum submitting to the voters of the County the question whether to change Fiscal Court to the commissioner form of government. In 1968 it was amended to make it possible to submit to the electorate the question of whether to return Fiscal Court back to the magistrate form of government. 1968 Kentucky Acts, Ch. 80, at 206. Among other things KRS 67.050 requires preelection newspaper *publication* "pursuant to KRS chapter 424"

and "in addition" that it be *advertised* "by printed handbills posted at one or more conspicuous places in each precinct ... stating when the election will be held and the purpose thereof." It is *stipulated* in the record that these legal requirements for holding the election were not met.

"Neither the Jefferson County sheriff nor any other officer appointed to hold the election either had the Order published pursuant to KRS Chapter 424 or had the required handbills regarding the election on the Public Question posted in each precinct in the county before the election as required by KRS 67.050(1) and (3)." *Stipulation of Facts,* # 5, filed Feb. 22, 1985.

Further, KRS 67.050(1) provides that when the County Judge/Executive receives a written petition of 100 voters requesting an election to submit this question, he "shall" enter an order calling the election "at the next regular term after the petition is filed." KRS 67.050(1). Again, it is *stipulated* that this procedure was not followed. Although there is some confusion about what constitutes a "regular term" under statutes and ordinances presently extant, the present Order was entered on a date that fits no conceivable definition of the term.

John W. Robinson, a resident of Jefferson County who voted at the November 6, 1984 election, filed suit on January 22, 1985, seeking judgment declaring the magisterial referendum election void.

His suit further attacked the validity of the post-election procedures used to reapportion the county to accommodate the return to a magisterial form of government, claiming that the District Reapportionment Commission was constituted and functioned unlawfully, and, further, that the Commission's report, which was adopted by Jefferson Fiscal Court, should be declared void in any event because "the fifth district ... [was] not drawn according to the criteria set out in KRS 67.045(2)."

His second suit filed January 30, 1985, consolidated with the first, reiterates the

allegations of the first insofar as the work of the Reapportionment Commission, and alleges additional reasons to declare unlawful the subsequent efforts by the County Judge/Executive and Fiscal Court to remedy deficiencies in the functioning of the Reapportionment Commission.

Both suits combined seek multiple relief including: voiding the November 6, 1984 magisterial referendum, voiding the work of the District Reapportionment Commission, and enjoining the scheduled elections to fill the newly created positions of Justice of the Peace or a magistrate.

Because this is a case of great public interest in Jefferson County, and because a large number of candidates have filed and are committed to campaigning both for the newly created positions of Justices of the Peace (magistrates), and for the positions of Constable which presumably attend to each election for magistrate, the trial court proceeded with all deliberate speed. The trial court scheduled oral argument as soon as possible allowing only time necessary for pleadings, stipulation of facts, and preargument briefs. The case was argued on March 29, 1985. On April 4, 1985 the trial court entered an extensively written Opinion and Order addressing the multiple questions at issue.

The appellate process has proceeded with similar promptness. Notices of appeal and cross-appeal were filed April 15, 1985. The parties filed a joint motion for transfer to the Supreme Court, which was granted, thus bypassing whatever delay would have been otherwise occasioned during a voyage in the intermediate appellate court. Briefing followed an expedited schedule, and oral arguments were scheduled for immediately after completion of the brief process. The last Reply Brief was due May 13th. Oral argument was set for May 14th.

With due deference to the large number of candidates continuing to expend time and money in escalating proportions as election date approached, our decision was announced by Order, opinion to follow, immediately upon conclusion of the deliberative process. Our Order of May 17, 1985 declared the referendum election void.

Announcing the decision with opinion to follow is an unusual step done solely out of consideration of the ongoing efforts of those involved in the election. We desire to limit the adverse effects upon them as much as possible.

As Kentucky's court of last resort, all of our decision making involves consequences that fall heavily on the losing party. Where so many are affected, both candidates and electorate, we are acutely aware of both the difficulties and the responsibility. Nevertheless, we must discharge the responsibility entrusted to us to the best of our ability and in accordance with our own conscience. We have been entrusted with the responsibility of deciding this case according to law without regard to whether or not the decision is a popular one. Our opinion is as follows:

1) KRS 67.050(1) requires that the order calling the election on the magisterial form of government be "published pursuant to KRS Chapter 424." KRS 424.140(2) requires the advertisement of such an election, stating "the time and purpose of the election, and ... the substance of the question," and KRS 424.130(1)(d) requires that such advertising "shall be published at least once ... not less than seven (7) days nor more than twenty-one (21) days before" the election takes place. It is stipulated by the parties that these mandatory advertisement requirements were never complied with.

2) KRS 67.050(1) further requires that the responsible officials shall "in addition advertise it [the election] by printed handbills posted at one or more conspicuous places in each precinct in the county for the length of time that publication is required, stating when the election will be held and the purpose thereof." It is stipulated that no handbills were posted.

3) KRS 67.050(1) further requires that the County Judge/Executive's order calling the election "shall be entered at the next regular term after the petition [calling for it] is filed." The County Judge/Exec-

utive's order in this case was not entered "at the next regular term after the petition" under any conceivable interpretation of the meaning of "regular term." There has been no effort to explain how the order as entered complied with this requirement. We are urged to disregard its existence, but are not at liberty to do so.

The trial court concluded that "the statutory provision for the publication and posting of the election is mandatory," and that "failure to follow such provision as required by the statute would be a fatal defect and invalidate the election." However, the trial court avoided this unhappy result stating the following reason:

> "Although failure to comply with the statute as to publication and posting is sufficient to invalidate the election, ... plaintiff's complaint is barred for failing to challenge the election within thirty (30) days thereafter, pursuant to KRS 120.250."

Thus, in reviewing the judgment the threshold issue is whether this action to declare the election void is barred because it was not brought within thirty days under the terms of KRS 120.250.

■ With respect to appellant's efforts to have the actions of the redistricting commission voided as unlawful, the thirty days provision in KRS 120.250 has no application. The statutes involved are KRS 67.-050(4) and KRS 67.045, styled "District boundaries—Reapportionment-Procedure." The trial court held that "the Fiscal Court, recognizing it failed to comply with the requirements of the statute appointed [a] second committee of commissioners." The trial court held that the action of the second committee cured the defects in the first. The trial court further found that one of the eight districts drawn by the commission, the fifth district, was so drawn as to fail to comply with the statutory requirement of being "compact," and ordered that "the reapportionment plan be remanded to the Fiscal Court" to comply

with the statute. However, the trial court ordered that the elections could go forward "as presently apportioned" with redistricting to take place *after* the November, 1985 general election at which the magistrates would be selected.

Because we have decided that the thirty day proviso for election contests under KRS 120.250 does not bar the appellant's claim that the November referendum was void, we do not decide these further questions regarding how the reapportionment commission was constituted and how it functioned, whether the fifth district was so drawn that it failed to comply with the statutory mandate,[1] and, if so, whether it was proper to proceed with the election of magistrates after the trial court held that at least one magistrate would be elected from a district already declared improperly constituted. These are questions which would only need to be addressed were the November referendum not void in the first place.

We return to address the principal question in the present case: does the thirty days provision in KRS 120.250(1) apply in a suit seeking to declare void an election to decide a "public question"?[2]

KRS Chapter 120 is styled *"Election Contests."* It was enacted to provide statutory machinery for challenging the results of an election where the right to make such a challenge did not previously exist. See *Patterson v. Knapp,* 125 Ky. 474, 101 S.W. 379 (1907); *Bass v. Katterjohn,* 194 Ky. 284, 239 S.W. 53 (1922). "Courts of equity have not inherently, and had not at common law, the jurisdiction to try contested election cases." *Patterson v. Knapp, supra* at 101 S.W. 379.

■ KRS 120.250 is styled "Contest or recount of election on public question." The thirty days provision in KRS 120.250 relates to the type of case where the election is not void ab initio, but voidable (or contestable) on grounds specified in that

---

1. A majority of this court does not believe that the fifth district was illegally drawn.

2. We do not address elections to fill public office in this opinion.

Chapter. The "grounds of contest" enumerated in KRS 120.250(1) are:

"... the casting of illegal votes, the exclusion of legal votes, the unfair or illegal conduct of the election, tampering with the returns, the alteration of the certificates of the results, bribery, fraud, intimidation or corrupt practices, or any conduct or practice tending to frustrate, obstruct or interfere with the free expression of the will of the voters."

Both KRS 120.260 and KRS 120.270 make it clear that KRS 120.250 is intended to deal with voting and counting of ballots. The final phrase of the description of the type of conduct covered by the thirty days provision in KRS 120.250, "or any conduct or practice tending to frustrate, obstruct, or interfere with the free expression of the will of the voters," is intended to amplify the list of election violations in the phrases preceeding it. It does not function as a divestiture of preexisting equitable jurisdiction over void elections. The rule of *ejusdem generis* applies. Such words are general words, not to be construed in their widest extent, but to be held as applying only to things of the same general kind or class as those specifically mentioned. Black's Law Dictionary, 464 (rev. 5th ed. 1979). KRS Chapter 120, *Election Contests,* and more specifically KRS 120.250(1), is a *grant* of authority, not a *limitation* of preexisting authority.

■ As is clear from both the title to KRS Chapter 120 and those cases permitting attack on the validity of elections which preexisted the statutory machinery for election contests in KRS Chapter 120, courts of equity have always had the inherent power to set aside a void election, just as in the case of a void judgment.

■ The distinction drawn is between a void election, and one merely voidable; between preconditions to a valid election, and

an election with some latent insufficiency. An election is void where the conditions precedent to the holding of a valid election have not been met. In such case the election is not authorized by law. The leading case in point is *Ridener v. Perkins,* 297 Ky. 263, 180 S.W.2d 83 (1944), holding that regardless of the existence of an election contest statute, the circuit courts of this state have jurisdiction in equity to consider an action which directly attacks an election on a public question on grounds which render it wholly void. The attack on the election in *Ridener* was on grounds similar to those in the present case. We said:

"... [I]t is obvious that the election was void, for it was not approved by the fiscal court, as required under KRS 259.-040, to say nothing of the fact no notice of it was given....

We held in the recent case of *Ray v. Spiers,* 281 Ky. 549, 136 S.W.2d 750, that anyone interested in the result of a special election (a local option election in that instance) could attack it in a direct proceeding in equity on grounds rendering it wholly invalid or void....

... Nor is it necessary that we consider the applicability of KRS 122.140, which provides for a contest or recount of an election on any public question [3]...." 180 S.W.2d at 83.

■ As a general rule, when a party with standing challenges compliance with the statutory requirements for calling the election, rather than merely challenging conduct of the election, that party has the right, apart from statutes authorizing an "election contest," to maintain an action to have the election declared void. *Gregory v. Franklin-Simpson County Bd. of Education,* 302 Ky. 404, 194 S.W.2d 961 (1946). There is a caveat to this rule which, perhaps, creates some confusion. It is that

---

**3.** KRS 122.140 is the predecessor to KRS 120.-250. It contains the thirty day provision asserted as a bar to the present action. The trial court's opinion mistakenly stated that the new statute contained *additional* language expanding the type of case included within the parameters of an election contest ("or any conduct or prac-

tice tending to frustrate, obstruct or interfere with the free expression of the will of the voters"). But this *same* language existed in KRS 122.140, the predecessor to KRS 120.250; indeed, *since* 1930. Ky.Acts, Ch. 52, § 1 (1930). *Ridener v. Perkins, supra,* is squarely in point.

where the election is not void on its face because of failure to comply with statutory preconditions, but, rather, the defect is a latent one, and the election is only voidable upon proof of underlying facts, the rule has no application. A good illustration of this caveat is *Neal v. Manning*, 266 Ky. 683, 99 S.W.2d 766 (1936). The plaintiff questioned the sufficiency of the signatures on the petition for a local option election, challenging such matters as dates and addresses of the signers. The court held that in such case "the election was not void, even though it might be voidable by proper contest." 99 S.W.2d at 767. *Forrester v. Terry*, Ky., 357 S.W.2d 308 (1962) is another case that relates to deficiencies, rather than absence, of statutory compliance.

In *Durr v. Washington County*, Ky., 339 S.W.2d 444 (1960), plaintiffs brought an action pursuant to KRS 122.140, to contest an election held to approve the levy of a school building tax as then provided by KRS 160.477. We stated:

"The other grounds for contest set forth in the complaint, relating to the actions of the Board of Education and Fiscal Court, the advertisement, and the placing of the question on the ballot, are not included in the enumeration of permissible grounds as set forth in KRS 122.140 and therefore do not state a cause of action [under the election contest statute]." *Durr, supra* at 446.

■ *Durr* was tried as an election contest case. The point for our purposes is that the preconditions to holding a valid election challenged in the present case are not part of the enumerated list of grounds for an election contest in the *Election Contests* statute. An election contest action which does not attack the election as void is justiciable under KRS Chapter 120, Election Contests, or under other specific statutory authorization, or not at all. But a suit challenging the election on jurisdictional prerequisites is a different matter. The distinction is pointed up by the opinion in *Gabbard v. Roberts*, 220 Ky. 480, 295 S.W. 438 (1927). The *Gabbard* court uses the term "jurisdictional prerequisite" to mean a requirement which is indispensable to a valid election. *Gabbard, supra* at 440.

*Mays v. Slemmons*, 14 Ky.Law Rep. 660 (Sup.Ct.1893) held that the compliance with a notice statute was jurisdictional for a special election on a public question (a school tax), stating:

"The notice, therefore, become the jurisdictional fact—the right to hold the election comes not from the statute alone, but from the notice to be given by the official."

"[T]he word 'jurisdiction' often serves as a policy label, marking off the indispensable from the dispensable." *Grubb v. Wurtland Water District*, Ky., 384 S.W.2d 321, 323 (1964). Where to draw this line is sometimes difficult. We would be quick to agree that such a line must be drawn carefully so as not to frustrate the results of an election where it is reasonably debatable whether the statutory prerequisites to holding a valid election have been met.

■ Unfortunately, the present case is not debatable. It is flatly stipulated that the statutory prerequisites have not been met. The only question is whether the failure to meet such prerequisites can be ignored. We are obliged to hold that in present circumstances the statutory requirements can not be ignored. Nor does the thirty days provision in KRS 120.250 provide an "out" to avoid recognizing that such an election is void when the question is presented. This is not an election contest case where the election is simply voidable, and not void. This type of challenge is not limited by any statute, but by such equitable defenses, like laches and estoppel, as may exist against the challenger. There may be cases where the only proper time to bring the action is before the election, and not after.

The results here may fall hard on some, but it is easy to imagine the issue in this case coming to us later on in other contexts; the results would be the same, and the losses occasioned by the voting for magistrates and constables even greater. It is possible to conceive how those ag-

grieved by this decision could have been damaged much worse.

■ The fact that the election, now voided, was held, is not an impediment to holding another election, this time properly held, at which the voters can change Jefferson County government from commissioner to magistrate form if they so desire. If done, those responsible must then see to it that the election is done properly.[4]

It is the holding of this Court that the 1984 referendum on return to magistrate form of government in Jefferson County is void. The action is remanded to the trial court to enter a judgment declaring it void and enjoining its implementation in any manner including primary and general elections for Justices of the Peace/Magistrates. The remaining issues relating to the establishment, composition, functioning and results of the Reapportionment Commission, and to whether those seeking to vote back in the commissioner form of government would have had a right to place the question on the ballot at the next general election, are all rendered moot by this decision.

STEPHENS, C.J., and LEIBSON, STEPHENSON and VANCE, JJ., concur.

AKER, J., dissents by separate opinion in which GANT, J., joins.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because KRS 120.250(1) provides that an election contest must be filed within 30 days after the election. The statute is clear and unambiguous.

In addition to the specific grounds of contest, which include the illegal conduct of the election, there is a provision "any conduct or practice tending to frustrate, obstruct or interfere with the free expression of the will of the voters."

Although the failure to comply with the statute as to publication and posting might be sufficient to invalidate the election, the failure to challenge the election within 30 days is an absolute bar or statute of limitations to contesting it at this time. *Dunn v. Marshall County Hospital District,* Ky., 543 S.W.2d 767 (1976). This election contest was not filed until January 21, 1985, almost 75 days after the election.

*Forrester v. Terry,* Ky., 357 S.W.2d 308 (1962), holds that a complaint of insufficient notices of election and the form of the ballot is regarded as an election contest under KRS 122.140, the predecessor to KRS 120.250, and is barred by the 30-day limitation. That case involved the lack of authority of the body authorizing the election. No such issue is raised here.

For whatever reason, the original decision to place the matter before the voters seems to have been made in a hasty fashion that totally ignored the requirements of KRS 67.050 and the decision of this Court in *Clinton County Farm Bureau v. Clinton County Fiscal Court,* Ky., 339 S.W.2d 930 (1960). If they had adhered to KRS 67.050, this entire case would have been avoided. Certainly here actual notice was fully achieved because approximately 231,000 people voted on the question and approved the new form of government by 7,000 votes.

The effectiveness of requiring printed handbills or conspicuous posting in each precinct may be questioned in this age of mass electronic notification. Nonetheless the law remains on the books. In passing, it might be observed that the legislature could consider the practical value of such a law in contemporary society. I cannot quarrel with the technical interpretation of KRS 67.050 used by the majority and the circuit court.

Those who opposed the referendum should not escape criticism. Following their defeat at the polls this election chal-

---

**4.** The "four years" waiting period in KRS 67.-050(2) would have *no application* to a new petition for return to magistrate form of government because a void election is the same as no election. *Brashear v. Eversole,* 284 Ky. 313, 144 S.W.2d 513, 515 (1940).

lenge was instituted which was far too late in my opinion. Clearly the voters expressed their view, for good or ill, on the substance of the election November 6, 1984. The purpose of KRS 120.250 is to prevent fraud and also to limit the time in which election contests may be initiated so as to give finality to the express will of the voters. It is not to give technical solace to the unsuccessful.

The rule of *ejusdem generis* does not necessarily require that the general provision be limited in its scope to the identical things specifically named, nor does it apply when the context manifests a contrary intention. The maxim is only an illustration of the broader rule of *noscitur a sociis* which is that the meaning of a word is known from the accompanying words. In my view the language of KRS 120.250(1) clearly states a limitation on the time in which an election contest may be filed. The basis for the cause of action ultimately filed as an election contest was known far before the November 6, 1984 election and could have easily been instituted within the 30 day period.

The legislature wisely provided for the 30-day limitation in order to afford stability and finality to the decisions of the voters as a prudent method of bringing order to our electoral system.

AKER, Justice, dissenting.

With all deference to the opinion of my colleagues in the majority I must dissent. While recognizing that KRS 67.050 was not specifically followed in regards to either publication or advertising of notice of the election, I must conclude that these requirements have outlived their usefulness in the day of modern communication. The notice requirements of KRS 67.050 are anachronisms which have flowed from the 19th century which was an era of limited news and information dissemination. We no longer suffer from that limitation.

The extensive media coverage of this election and the number of votes cast on the issue demonstrate that the public did have notice of the referendum and its contents.

To preserve the integrity of the election process, there must be a deadline to an election challenge. I believe that KRS 120.250 would bar the present suit since it was filed past the 30-day time limit. Although the language of KRS 120.250 does not specifically include the present type of election challenge, the statute can be read so as to include it.

One cannot fit a square peg in a round hole, but under the present circumstances I am not adverse to whittling an oval peg to fit in a round hole. This court is continually called upon in a flurry of last-minute litigation to pull someone's "chestnuts" out of the fire, and I would use KRS 120.250 as a method of "blight" to kill off this type of "chestnut."

Therefore, I would affirm the judgment of the Jefferson Circuit Court as it pertains to these questions.

I am authorized to say that GANT, J., joins in this dissent.