**A.B. CHANDLER III, Attorney General of the Commonwealth of Kentucky, Appellant,**

v.

**CITY OF WINCHESTER, Kentucky, Appellee.**

**No. 97–CA–0937–MR.**

Court of Appeals of Kentucky.

July 24, 1998.

---

A.B. Chandler, III, Attorney General, Scott White, Assistant Attorney General, Frankfort, for Appellant.

Roger L. Peterman, Covington, Janet R. White Prewitt, Winchester, for Appellee.

C. Timothy Cone, Lexington, for Amicus Curiae.

Joseph U. Meyer, Frankfort, William A. Thielen, Neil S. Hackworth, Lexington, Sheryl G. Snyder, Louisville, for Amicus Curiae, Lexington League of Cities and Ky Ass'n of Counties.

Before BUCKINGHAM, COMBS and GARDNER, JJ.

## OPINION

BUCKINGHAM, Judge.

A.B. Chandler III, Attorney General, and C. Timothy Cone, Special Amicus Curiae, appeal a summary judgment of the Clark Circuit Court in favor of the City of Winchester (the City). For the reasons set forth hereinafter, we affirm.

In 1994, the General Assembly enacted Senate Bill 256 which proposed an amendment to the Kentucky Constitution. The bill concerned the operation of local government and involved substantial changes to Sections 156, 157, and 158 of the Kentucky Constitution. Pursuant to Kentucky Revised Statute (KRS) 118.415(2), then-Attorney General Chris Gorman prepared a question highlighting and summarizing what he perceived to represent the substance of Senate Bill 256 to be placed on the ballot for the vote of the electorate. The proposed amendment was adopted by a vote of 273,142 to 233,189.

Part of the newly adopted amendment removed a portion of Section 157 of the Kentucky Constitution (hereafter abbreviated as § 157) which provided that no local government could become indebted for any purpose in an amount exceeding its income and revenue for that year without the approval of two-thirds of its voters.[1] In its 1996 session,

---

1. As written, § 157 provided in pertinent part that "[n]o county, city, town, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void."

the General Assembly enacted legislation permitting local governments to issue general obligation bonds [2] without holding the public referendum previously required by § 157. This legislation is now codified at KRS 66.011–.990.

KRS 66.191(2) requires a local government desiring to issue general obligation bonds to file a "complaint for validation" and "commence an action for the purpose of obtaining an adjudication of its authority to issue or enter into and the validity of . . . the bonds, and of the validity of all proceedings taken . . . in connection therewith. . . ." In September 1996, the City filed the first bond validation proceeding under the newly enacted provisions of the Kentucky Constitution and the provisions of KRS Chapter 66. The City's complaint for validation was filed in the Clark Circuit Court, and the attorney general was made a party to the action pursuant to the requirements of KRS 66.191(4) and (5).

The attorney general entered an appearance in the case and elected to oppose the bond validation proceeding. He also filed a motion to dismiss the proceeding on the ground that the newly enacted constitutional amendments to § 157 were void due to the alleged failure of former Attorney General Gorman to "set forth the substance of the amendments" as required by KRS 118.415(2). Furthermore, the Kentucky Supreme Court appointed C. Timothy Cone as special amicus curiae pursuant to Civil Rule (CR) 14.03.[3] Cone joined in the attorney general's motion to dismiss the City's complaint due to the allegedly void nature of the 1994 constitutional amendment.

The trial court granted the City's motion for summary judgment and denied the attorney general's motion to dismiss the proceeding. The trial court stated that the attorney general was barred from raising the issue of the sufficiency of the ballot question by the statute of limitations found in KRS 120.180. Furthermore, the trial court stated that if it had considered the merits of the case, it would have found that the ballot question prepared by Attorney General Gorman was sufficient. Attorney General Chandler then filed this appeal.

The standard of review on appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996). Also, the trial court's ruling is entitled to no deference. *Id.* The relevant facts in the case sub judice are not in dispute, and the issue is whether the City was entitled to a judgment as a matter of law.

The first issue is whether the trial court erred in concluding that the attorney general's claim regarding the sufficiency of the ballot question is barred by KRS 120.280(1), which provided in relevant part that "[a]ny elector who was qualified to and did vote on any ;.. constitutional amendment . . . may contest the election or demand a recount of the ballots by filing a petition, not more than fifteen (15) days after the official canvass and the announcement of the vote for the state by the State Board of Elections. . . ." The statewide election on the constitutional amendment involved in this case was held in November 1994. However, the attorney general did not file his allegation that the election was void until November 1996. Therefore, if the time limitation of KRS 120.280(1) is applicable to the case sub judice, then the attorney general's attempt to have the 1994 election declared void is time-barred and of no effect.

The ballot question which appeared on the 1994 general election ballot stated as follows:

Are you in favor of amending the constitution to require cities, counties, and taxing districts to adopt a balanced budget prior to each fiscal year, and prohibit them from expending any funds in excess of the revenues for that year; allow the General Assembly to classify cities based on factors

---

**2.** General obligation bonds are backed by the full faith and credit of the issuer and may bind the issuer for a number of years.

**3.** CR 14.03 requires the appointment of a special amicus curiae "to participate in the proceeding the same as if he or she were a party opposing the legality of the bond issue. . . ."

other than just population; allow the General Assembly to authorize cities to exercise any power or function that furthers a public purpose and does not conflict with any constitutional or statutory provision; and allow the General Assembly to make laws regarding the existence, boundaries, form of government, functions, and officers of cities?

The attorney general's complaint with the ballot question proposed by his predecessor is that the question does not mention the fact that the proposed amendment would abolish the requirement that any debt incurred by a local government in excess of its revenue for any given year must be approved by a two-thirds vote of its citizenry. He argues that the most important feature of the amendment was its deletion of this provision in § 157 and that the question fails to "state the substance of the amendment in the form of a question in a manner calculated to inform the electorate of the substance of the amendment," as required by KRS 118.415(2).

The trial court determined that the attorney general's challenge to the sufficiency of the ballot question constitutes a contest of the election and that the statute of limitations of KRS 120.280(1) is applicable. As the attorney general did not contest the passing of the constitutional amendment within fifteen days after the official canvass and announcement by the State Board of Elections, the trial court reasoned that the challenge was time-barred.

On the other hand, the attorney general asserts that the statute of limitations is inapplicable to his challenge because the constitutional amendment is void rather than voidable due to the faulty ballot question. He cites, as do the other parties and the trial court, *Robinson v. Ehrler*, Ky., 691 S.W.2d 200 (1985).

The Kentucky Supreme Court in the *Robinson* case held that a similar election contest statute (KRS 120.250) "relates to the type of case where the election is not void ab initio, but voidable (or contestable) on grounds specified in that Chapter." *Id.* at 203–04. The court then stated as follows:

The distinction drawn is between a void election, and one merely voidable; between preconditions to a valid election, and an election with some latent insufficiency. An election is void where the conditions precedent to the holding of a valid election have not been met. In such case the election is not authorized by law.

. . . .

As a general rule, when a party with standing challenges compliance with the statutory requirements for calling the election, rather than merely challenging [the] conduct of the election, that party has the right, apart from statutes authorizing an "election contest," to maintain an action to have the election declared void.... There is a caveat to this rule which, perhaps, creates some confusion. It is that where the election is not void on its face because of failure to comply with statutory preconditions, but, rather, the defect is a latent one, and the election is only voidable upon proof of underlying facts, the rule has no application.

*Id.* at 204–05. Further, in discussing void elections and "jurisdictional prerequisites" which are indispensable to a valid election,[4] the *Robinson* court stated that "[w]e would be quick to agree that such a line must be drawn carefully so as not to frustrate the results of an election where it is reasonably debatable whether the statutory prerequisites to holding a valid election have been met." *Robinson, supra* at 205.

In the case sub judice, the "jurisdictional prerequisites" were met. As that specifically relates to this case, the statutory requirements, including the preparation and certification of the ballot question by the attorney general, were met. *See* KRS 118.415(2). The attorney general's challenge to the ballot question involves an alleged latent defect which would render the election "only voidable upon proof of underlying facts...." *Robinson, supra* at 205. *See also Forrester v. Terry*, Ky., 357 S.W.2d 308, 310 (1962) (holding that a challenge to the sufficiency of the form of a ballot in a referendum election may only be brought under

---

4. *See Gabbard v. Roberts*, 220 Ky. 480, 295 S.W. 438, 440 (1927).

election contest statutes). In short, we agree with the trial court that the fifteen-day limitation period of KRS 120.280(1) was applicable and that the attorney general's challenge to the election some two years later was time-barred.

Although the issue of the ballot question itself is now moot since any challenge to it is time-barred, we agree with the trial court that the ballot question presented to the electorate was adequate. As we have noted previously, KRS 118.415(2) requires the attorney general to condense the proposed amendment "in the form of a question in a manner calculated to inform the electorate of the substance of the amendment...."

In *Funk v. Fielder*, Ky., 243 S.W.2d 474 (1951), the court stated as follows:

> Since it [a predecessor to KRS 118.415] is but a statute implementing the machinery of the Constitution in this respect, it should be given a liberal construction in its application. If the question is not misleading or inconsistent and reveals the essential character and purpose of the proposed amendment, it must be deemed to meet the requirements of the Constitution and the statute.

*Id.* at 476. The *Funk* court further noted that "[t]he paramount thing about which the voter should be advised is what will be the new provision, not how does it compare with the present." *Id.* at 478. It has also been held in *Ferguson v. Redding*, Ky., 304 S.W.2d 927 (1957), a case involving the sufficiency of a ballot question, that "the Attorney General has a limited obligation of interpretation, in the sense that he may employ other words to express the meaning of the amendment[,]" but the attorney general may not "determine possible side-effects or ultimate consequences" of the proposed amendment, "leaving it to the voters to judge of its possible consequences." *Id.* at 930–31.

 We conclude that the trial court was correct when it stated that it was not the responsibility of the attorney general to include the changes or consequences of the amendment, but only to state the basic substance of the amendment. The ballot question was not misleading or inconsistent, and it revealed the substance of the amendment. It therefore met the requirements of the constitution and the statute. *See Funk* at 476.

The judgment of the Clark Circuit Court is affirmed.

All concur.