**CITY OF PIKEVILLE; Frank E. Justice; and Donovan Blackburn, Appellants,**

v.

**PIKE COUNTY, Kentucky; Anne Thompson Cassady; and Ballard W. Cassady, Appellees.**

No. 2008–CA–001056–MR.

Court of Appeals of Kentucky.

March 20, 2009.

Discretionary Review Denied by Supreme Court Nov. 18, 2009.

Russell H. Davis, Jr. (argued), Pikeville, KY, for appellants.

William M. Lear, Jr., Hanly A. Ingram (argued), Lynn Sowards Zellen, Lexington, KY, for appellees.

Roland Case, Pikeville, KY, for Pike County, Kentucky.

Before DIXON and NICKELL, Judges; BUCKINGHAM,[1] Senior Judge.

*OPINION*

BUCKINGHAM, Senior Judge (Assigned).

The City of Pikeville, its Mayor, Frank E. Justice, and its City Manager, Donovan Blackburn, appeal from an order of the Pike Circuit Court that granted a motion to dismiss their petition for a declaration of rights and their statutory action. The issue is whether the City has a statutory or equitable right to challenge a vote against the annexation of property belonging to the appellees, Ballard W. and Anne Thompson Cassady. The trial court concluded that the City did not, and we affirm.

On June 7, 2006, the City enacted Ordinance No. 0–006–010 which stated its intent to annex certain unincorporated territory in accordance with KRS 81A.420(1), which states:

When a city desires to annex unincorporated territory, the legislative body of the city proposing to annex shall enact an ordinance stating the intention of the city to annex. The ordinance shall accurately define the boundary of the unincorporated territory proposed to be annexed, and declare it desirable to annex the unincorporated territory.

*Id.* The area that the ordinance proposed to annex included part of a tract of property owned by the Cassadys, although it did not include the portion on which their house and outbuildings are located.

The statutory framework for challenging such annexation ordinances is contained in KRS 81A.420(2), which provides that a question on the annexation may be placed on the next election ballot. The statute states in pertinent part:

If following the publication of the annexation ordinance pursuant to subsection (1) of this section and within sixty (60) days thereof, ... fifty percent (50%) of the resident voters or owners of real property within the limits of the territory proposed to be annexed petition the mayor in opposition to the proposal, an election shall be held at the next regular election if the petition is presented to the county clerk and certified by the county clerk as sufficient not later than the second Tuesday in August preceding the regular election:

(a) The mayor of the city shall deliver a certified copy of the ordinance to the county clerk of the county in which the territory proposed to be annexed is located, who shall have prepared to be placed before the voters in each precinct embraced in whole or in part within the territory proposed to be annexed the question: "Are you in favor of being annexed to the City of .........?" If only a part of any precinct is embraced within the territory proposed to be annexed only persons who reside within the territory proposed to be annexed shall be permitted to vote. The clerk shall cause the sheriff or sheriffs to deliver to the election officers in each precinct in the appropriate counties copies of the ordinance proposing to annex;

(b) If less than fifty-five percent (55%) of those persons voting oppose annexation, the unincorporated territory shall become a part of the city; and

---

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

(c) If fifty-five percent (55%) or more of those persons voting oppose annexation, the ordinance proposing annexation shall become ineffectual for any purpose.

*Id.*

A petition in opposition to Ordinance No. 0-006-010 was delivered to the Mayor and to the County Clerk, requesting that they take all necessary actions required by KRS 81A.420 to ensure that a public question on the annexation would be placed on the ballot at the next general election. On August 8, 2006, the County Clerk issued a certificate of sufficiency declaring that

[p]ursuant to KRS 81A.420, it is hereby certified that the petition opposing the annexation is sufficient since it is signed by more than fifty (50%) of the property owners of the territory affected. Pursuant to KRS 81A.420, the question on annexation will be placed on the ballot for the November General Election to be held November 7, 2006.

As we have noted, the area that the City planned to annex included part of a tract of property owned by the Cassadys, but not the part on which their residence is actually located. The County Clerk questioned the eligibility of the Cassadys to vote on the annexation question because KRS 81A.420(2)(a) provides that "[i]f only a part of any precinct is embraced within the territory proposed to be annexed only persons who reside within the territory proposed to be annexed shall be permitted to vote."

The Cassadys, who are registered voters in the Coal Run Precinct, submitted affidavits of residency stating that they resided upon property located within the territory to be annexed.[2] The County Clerk there-

after allowed the Cassadys to vote on the question. The Cassadys were the only voters to vote on the annexation question, and they both voted "no." Under the terms of KRS 81A.420(2)(c), the ordinance was thereby rendered "ineffectual for any purpose" since more than 55 percent of those persons voting opposed annexation.

The City, the Mayor, and the City Manager thereafter filed a "Petition Demanding Recount of Election Ballots and to Determine Legality of Votes; and Petition for Declaration of Rights," naming the County[3] and the Cassadys as defendants. The petition sought relief pursuant to KRS 120.250, which governs contests and recounts of public elections, and KRS 418.040, the Declaratory Judgment Act. It was the position of the City that the Cassadys were ineligible to vote on the annexation question because they do not reside within the territory that the City proposed to be annexed. The County refused to take a position on the issue, but it requested the court to make a judicial determination concerning the legal issues raised by the petition so that the County and County Clerk would have a basis for future decisions.

The Cassadys filed an answer and counterclaim and a motion to dismiss the petition pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f) for failure to state a claim upon which relief can be granted. They argued that the plaintiffs lacked standing to bring an action under KRS 120.250 and that declaratory relief was also unavailable because the election was not void. After conducting a hearing, the circuit court granted the Cassadys' motion

---

2. The affidavits are not in the record.

3. The County was named in accordance with the terms of KRS 120.250(1), which requires the petition contesting the election to be filed against "the county, city or district in which the election was held[.]"

to dismiss.[4] This appeal followed.

■ The appellants contend that they were entitled to bring an action to contest the election pursuant to KRS 120.250(1). That statute provides in pertinent part as follows:

Any elector who was qualified to and did vote on any public question, other than a constitutional amendment or a question of local option under KRS Chapter 242, submitted to the voters of any county, city or district for their approval or rejection may contest the election or demand a recount of the ballots by filing a petition, within thirty (30) days after the election, with the clerk of the Circuit Court of the county in which the election was held, which court shall have exclusive jurisdiction to hear and determine all matters in such cases. The petition shall be against the county, city or district in which the election was held, and shall set forth the grounds of contest or reason for requesting a recount. The grounds of contest may be the casting of illegal votes, the exclusion of legal votes, the unfair or illegal conduct of the election, tampering with the returns, the alteration of the certificates of the results, bribery, fraud, intimidation or corrupt practices, or any conduct or practice tending to frustrate, obstruct or interfere with the free expression of the will of the voters.

*Id.*

It is undisputed that none of the appellants is an elector who was qualified to vote and did vote on the public question of the proposed annexation. The appellants have nonetheless argued that they should have been allowed to proceed because, they claim, on a previous occasion this Court gave tacit approval to the Attorney General to proceed with an action under KRS 120.280 (a parallel statute to KRS 120.250 concerning constitutional amendments) even though he was not an elector. *See Chandler v. City of Winchester,* 973 S.W.2d 78 (Ky.App.1998). But in that case, as the Cassadys have pointed out, this Court determined that the Attorney General's petition was barred by the 15–day limitations period contained in the statute and therefore never addressed the issue of his standing to bring the suit. *Chandler,* 973 S.W.2d at 82.

■ The appellants have also argued that barring them from bringing an action pursuant to KRS 120.250 would lead to an inequitable and absurd result and that the statute was not intended to prevent cities and city officials from contesting allegedly improper voting. They have relied on cases from other jurisdictions to support their contention that the circuit court was free to intervene in spite of the requirements of KRS 120.250. We have reviewed these cases and find the facts in each to be distinguishable. Furthermore, our case law is clear that

[a]n election contest is a purely statutory proceeding, special and summary in its nature. It is without doubt within the authority of the Legislature to prescribe by whom and under what conditions a contest may be maintained.

*Payne v. Blanton,* 312 Ky. 636, 229 S.W.2d 438, 440 (1950) (citations omitted). We thus conclude that the appellants were precluded from contesting the election pursuant to KRS 120.250 because the statute gave only "elector(s)" who were qualified to and did vote in the election the right to contest it.

■ The appellants also contend that they had the right to contest the election by bringing an action for declaratory relief independently and apart from the statuto-

---

4. The circuit court's order did not state reasons for granting the Cassadys' motion.

ry claim. However, "[c]ourts are in general agreement that a declaratory judgment act is not a substitute or alternative for such actions as are particularly provided for, to be brought in a particular way." *Sullenger v. Sullenger's Adm'x*, 287 Ky. 232, 152 S.W.2d 571, 574 (1941). Likewise, in *Cox v. Howard*, 261 S.W.2d 673 (Ky. 1953), the court held that the procedure for a recount and for contesting a primary election was "purely statutory" and that "[s]uch procedure cannot be changed or obviated by incorporating grounds for a recount or a contest proceeding in a declaratory action." *Id.* at 675.

■ Nevertheless, such a cause of action is available in election cases but only when the suit alleges that the election was void. The controlling case is *Robinson v. Ehrler*, 691 S.W.2d 200 (Ky.1985), which sets forth the general rule that:

As a general rule, when a party with standing challenges compliance with the statutory requirements for calling the election, rather than merely challenging conduct of the election, that party has the right, apart from statutes authorizing an "election contest," to maintain an action to have the election declared void. There is a caveat to this rule which, perhaps, creates some confusion. It is that where the election is not void on its face because of failure to comply with statutory preconditions, but, rather, the defect is a latent one, and the election is only voidable upon proof of underlying facts, the rule has no application.

*Id.* at 204–05 (citation omitted).

■■ Under *Robinson*, therefore, the appellants may only proceed with a declaratory judgment action if they can show that the election was void, rather than merely voidable. Any allegations of error that fall within the parameters of KRS 120.250 must be brought in an action pursuant to that statute.

An election contest action which does not attack the election as void is justiciable under KRS Chapter 120, Election Contests, or under other specific statutory authorization, or not at all.

*Robinson*, 691 S.W.2d at 205.

There is no dispute that the statutory preconditions to the election as set forth in KRS 81A.420(1) and (2) were complied with in this case: the ordinance was properly published, the petition in opposition to the ordinance was properly filed, and the question was properly placed on the ballot. The appellants nonetheless argue that under *Taylor v. Betts*, 141 Ky. 138, 132 S.W. 162 (1910), the entire election is void because the only voters who voted on the question were not legally entitled to do so and should not have been permitted to do so by the County Clerk and election officers.

In *Taylor*, a case that was decided well before the passage of KRS 120.250, the appeals court ruled that an election was void because of "the failure of the county judge to fix the time of the special registration on a day not less than five days prior to the election" as required by a statute. *Id.* at 163. The court also held that the election could not be upheld because almost two-thirds of the voters had not presented their registration certificates prior to voting as required by a statute. *Id.* at 164.

We note several differences between this case and the *Taylor* case. First, *Taylor* was decided nearly 100 years ago and before the enactment of KRS 120.250 that provides a statutory procedure for elections contests. Further, the *Taylor* court declared the election void from the outset because the county judge had not fixed the time of the special registration on a day not less than five days before the election. *Id.* at 163. In addition, the *Taylor* court

did not specifically state that the failure of many voters to present their registration certificates prior to voting rendered the election void. It merely stated, after having already declared the election void for another reason, that under those circumstances the election could not be upheld. *Id.* at 164.

The claim of the appellants that the Cassadys submitted a possibly untruthful affidavit in order to be allowed to vote on the annexation question falls squarely within the purview of KRS 120.250(1), which permits as grounds for a contest

the casting of illegal votes, the exclusion of legal votes, the unfair or illegal conduct of the election, tampering with the returns, the alteration of the certificates of the results, bribery, fraud, intimidation or corrupt practices, or any conduct or practice tending to frustrate, obstruct or interfere with the free expression of the will of the voters.

*Id.* In fact, the appellants themselves describe the alleged conduct of the Cassadys as the "mischief" that KRS 120.250 is intended to remedy.

Although the appellants are thereby left without a remedy, the situation is not unprecedented in our case law. This point was made in *North East Coal Co. v. Johnson County Fiscal Court*, 284 Ky. 121, 143 S.W.2d 1061 (1940), in which a corporation tried to challenge the outcome of a vote on a levy and tax collection, arguing that certain persons who had voted on the question, including a Mrs. Gamble, were not legal voters. The court ruled that corporations, not being electors, had no right to contest an election in the absence of statutory authority and that

to determine whether or not Mrs. Gamble voted for or against the tax, and to determine whether or not the persons named in the petition were qualified or legal voters, and as to how they voted,

would of necessity require a court of equity to hear an election contest.

*Id.* at 1062–63. Concluding that the court below had properly dismissed the case because it did not have jurisdiction to hear the suit, the court stated

The legislature has not seen fit to confer the power on the plaintiffs to contest this election, nor can a court of equity in a suit to enjoin the levy and collection of this tax pass on the questions raised as to whether or not certain persons were legal voters, and as to how they voted, or pass on the question as to whether or not Mrs. Gamble cast her vote for or against the tax. Such questions are for the decision of courts with jurisdiction to try election contests.

*Id.* at 1063.

Faced with a similar factual pattern, the circuit court in this case properly dismissed the suit. Its order is therefore affirmed.

ALL CONCUR.